UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDR L. YUFA,<br><br>           Plaintiff,<br><br>    v.<br><br>LIGHTHOUSE WORLDWIDE<br>SOLUTIONS INC.,<br><br>           Defendant. | Case No.  09-cv-00968-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 115 |

## I.  INTRODUCTION

Pending before the Court is Defendant Lighthouse Worldwide Solutions, Inc.'s ("Defendant") Motion to Dismiss for Failure to Comply with Court Order and Failure to Prosecute.  Dkt. No. 115.  Plaintiff Aleksander L. Yufa ("Plaintiff") has filed an Opposition (Dkt. No. 116) and Defendant has filed a Reply (Dkt. No. 119).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court DENIES Defendant's Motion for the reasons set forth below.

## II.  BACKGROUND

On March 5, 2009, Plaintiff, representing himself, initiated a patent lawsuit against Defendant, alleging that Defendant infringed upon his patent for particle detectors and reference voltage comparators (the "'983 Patent").[1]  Compl. at 1.  The '983 Patent relates to a particle

---

[1] Plaintiff also initiated eight other cases alleging infringement of the '983 Patent: (1) *Yufa v. Hatch Ultra Analytics, Inc*., (U.S. Dist. Or.), 1:09-cv-03022 PA, filed: 2009; (2) *Yufa v. Particle Measuring Systems, Inc*., (N.D. Cal.),  4:09-cv-01388 PJH, filed 2009; (3) *Yufa v. TSI, Inc*., (N.D. Cal.), 4:09-cv-01315 KAW, filed: 2009; (4) *Yufa v. Rees Scientific Corp*., (C.D. Cal.), 2:10-cv-

1    detector and counter, which is used to count particles and measure the size of particles, for

2    example, in the air or in a liquid.  Compl, Ex. A.  The particle counter uses a light laser beam to

3    measure the size and number of particles by measuring light that scatters when the light interacts

4    with a particle.  *Id.*  The light detector produces an electrical pulse based on the intensity of the

5    scattered light.  *Id.*  An example of a practical application of a particle detector is a smoke detector

6    or dust particle detector in a clean room environment.  Mot. at 2 (citing Ex. 9 to Def.'s Mot.

7    Summ. J. ("Pochy Rpt.") at 1, Dkt. No. 95-10).  Particle detectors typically use a comparator

8    threshold (a reference voltage) to eliminate the measurement of environmental noise so that the

9    particle detector only "counts" and measures particles of a certain minimum and maximum size.

10   *Id*. at 2.  The '983 patent specifically disclaims the use of a reference voltage, whereas all of

11   Defendant's products use a reference voltage.  *Id*. at 3, 5.

12         In his Complaint, Plaintiff alleges patent infringement of Claims 1-5 of the Original '983

13   Patent.  Dkt. No. 1.  The '983 Patent was under reexamination at the United States Patent and

14   Trademark Office at the time of the filing of the Complaint and the First Amended Complaint,

15   Dkt. No. 28 ("FAC").  Mot. at 3.  On August 4, 2009, the Court issued an Order staying this case

16   pending completion of the reexamination proceedings.  Dkt. No. 42.

17         At the conclusion of the reexamination, Claims 1-5 (related to wireless communication)

18   were cancelled.  Mot. at 3.  Claims 6-8 were determined to be patentable as amended.  *Id*.  The

19   limitation "without using a reference voltage converting each said amplified signal," was added to

20   Claim 6 of the '983 Patent during the reexamination process to distinguish Claims 6-8 of the '983

21   Patent from a similar patent held by Tokohiro Okada.[2]  *Id*.

---

23   03575 MMM (FMOx), filed: 2010; (5) *Yufa v. TSI, Inc*., (C.D. Cal.), 8:12-cv-01614  FMO (JCGx), filed: 2012; (6) *Yufa v. USA* (CAFC), 1:08-cv-0670, filed: 2008; (7) *Yufa v. Met. One Instruments, Inc*., (Dist. Or.), 1:08-cv-03016 CL, filed: 2008; and (8) *Yufa v. Lockheed Martin Corp*., (C.D. Cal.), 2:06-cv-03923 BRO (FFMx), filed: 2006.  Opp'n at 7.

[2] U.S. Patent No.4,491,926, entitled "Particle Size Distribution Analyzer," was issued on January 1, 1985, to Tokuhiro Okada, *et al*.  The Okada patent used a reference voltage to eliminate unnecessary fragmental signals or noises from the particle detector.  The Patent Examiner found that "it would have been unobvious to eliminate the use of a reference signal to filter unwanted noise in the Okada system, since Okada did not reduce background noise to a level that would make filtering unnecessary.  In contrast, the '983 patent has directly addressed the issue of operation without a reference voltage in the disclosure."  Def.'s Mot. Summ. J., Ex. 4 ("Reexamination") at 1154-55.

1    On October 15, 2012, the Court lifted the stay in this case. Dkt. No. 78. On December 12, 2012, Plaintiff filed a Second Amended Complaint ("SAC"), alleging for the first time that Defendant's products infringe Claims 6-8 of the Amended '983 Patent. Dkt. No. 83. Defendant filed an Answer to the SAC on December 27, 2012. Dkt. No. 84.

On July 24, 2013, Plaintiff filed his first set of ICs, which Defendant asserted did not comply with Patent L.R. 3-1 because they failed to show how Defendant's products infringed. Mot. at 6. Defendant filed a Motion for Summary Judgment on October 10, 2013. Dkt. No. 94. In the motion, Defendant asserted that its products did not infringe because its particle detectors use a reference voltage and measure pulse height to measure particle size, not duration. *Id*. at 8-9. In contrast, the undisputed facts established that the '983 Patent: (1) measured the width or duration of the pulse to determine the size of the particle, and (2) specifically disclaimed the use of a reference voltage. *Id.* at 12-13.

On December 2, 2013, the Court denied as premature Defendant's motion for summary judgment because the Court could not make a general ruling as to infringement without adequate Infringement Contentions ("ICs"). Dkt. No. 104. The Court ordered Plaintiff to serve ICs that fully complied with Patent Local Rule 3-1 by January 13, 2014, and warned that failure to do so might result in dismissal of Plaintiff's case. *Id*. The Court additionally ordered Plaintiff to produce any documents required under Patent Local Rule 3-2 that were not previously produced by January 13, 2014, and ordered Defendant to serve invalidity contentions by February 27, 2014. *Id.*

Eleven days later, on December 13, 2013, Plaintiff filed supplemental ICs, which Defendant contends were also inadequate. Mot. at 8. The only substantive changes Plaintiff made was to insert a list of 36 product names into the box for each element of the claim, and to change the word "in" to "at least in" at several places. *Id.* (citing Pl.'s First Supp'l ICs, Dkt. No. 105). Plaintiff did not specifically identify how these products infringed or produce any supporting documents. *Id*. at 8.

1    Plaintiff filed a "Discovery Letter" concurrently with the Supplemental ICs in which he
2    asserted that Defendant continued to withhold its particle detection devices and unredacted
3    schematics, which he claimed he needed to respond to discovery. Pl.'s Disc. Ltr., Dkt. No. 105.
4    In response, Defendant filed a letter on January 7, 2014 in which it objected to the discovery letter
5    as untimely because it was filed 84 days after the discovery cut-off date. Dkt. No. 108. Defendant
6    also argued that except for minor changes, Plaintiff's Supplemental ICs still failed to conform to
7    the Patent Local Rules because they were nearly identical to those he previously filed. *Id.*

8    On January 13, 2014, the Court set the matter for a case management conference to address
9    the sufficiency of Plaintiff's Supplemental ICs and any outstanding discovery. Dkt. No. 109. At
10   the case management hearing on January 23, the Court ordered Defendant to provide Plaintiff with
11   an unredacted copy of the schematic to review by February 7, 2014. Dkt. No. 111. The Court
12   additionally ordered Plaintiff to file his Second Supplemental ICs by February 21, 2014. *Id.*

13   On February 12, 2014, Plaintiff filed the Second Supplemental ICs. Dkt. No. 114.
14   Defendant asserts that these ICs are also deficient because they still fail to explain *how* their
15   products infringe. Mot. at 8-9. Defendant did not meet and confer with Plaintiff or inform him of
16   this alleged deficiency.

17   On March 28, 2014, Defendant filed the present Motion to Dismiss. Defendant asserts that
18   at this point, a motion to compel further contentions would be a waste of the Court's time because
19   Plaintiff will never be able to set forth any valid contention that Defendant's products measure
20   duration to determine the particle size. Mot. at 9. This is because Defendant's products use a
21   reference voltage, as indicated on the schematics, and Plaintiff's patent does not. *Id*. at 3, 8.
22   Further, Defendant's expert report states that Defendant's products use the pulse height to measure
23   the particle size, not duration. *Id*. at 9. Yet the ICs do not address how Defendant's products
24   perform "an analog-digital form pulse duration conversion" – or even that these products measure
25   duration or width of the pulse to determine the size of a particle. *Id*. at 8-9. Defendant also asserts
26   that further proceedings would be futile because Plaintiff has filed two attempts at ICs "after
27   Defendant supplied its non-infringement arguments in an expert report." *Id*. at 9.

28   Defendant also asserts that Plaintiff has not diligently prosecuted this case, as evidenced by

4

his failure to participate in the discovery process or comply with his discovery obligations. *Id*. at 3. Defendant also asserts that Plaintiff has used the same litigation tactics in this case as in his other cases. *Id*. at 5.

As to other discovery matters, Defendant asserts that Plaintiff's responses to the requests for admissions ("RFA") failed to comply with Federal Rule of Civil Procedure 36 because Plaintiff responded to each RFA with the statement: "[Plaintiff] neither admits nor denies at this time." *Id*. at 4. Defendant argues that Plaintiff improperly asserted the "work product privilege" in response to interrogatories seeking Plaintiff's theory of infringement.[3] *Id*. Nor has Plaintiff produced any documents relating to the invention of the '983 Patent, other than those attached to the Complaints. *Id*. at 5.

Plaintiff also did not disclose an expert, nor provide an expert report or rebuttal expert report by the expert discovery deadline, though Defendant timely provided an expert report on August 16, 2013. *Id*. at 4.

Nor did Plaintiff take any depositions. *Id*. at 5. At his own deposition, Plaintiff declined to answer any questions regarding his theory of infringement, again citing "the work product privilege" as his basis for not answering. *Id*. (citing Kanach Decl., Ex. C ("Yufa Depo") at 221:1-222:11 and 222:24-223:5, Dkt. No. 95-17). Plaintiff also testified that he did not perform a pre-suit analysis with respect to the defendants in any of the patent infringement cases. *Id*. (citing Pl.'s Depo. at 100:15-103:13; 115:18-116:25; 243:21-244:9).

Last, Defendant asserts that despite the September 10, 2013 discovery cut-off, Plaintiff continues to file discovery letters and allege discovery disputes in his pleadings. *Id*. at 3-4 (citing Case Mgmt. Order ¶ C, Dkt. No. 87 ("No discovery disputes may be brought to the Court's attention more than 10 days after [September 10, 2013].").

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 41(b), a defendant may move for dismissal, for

---

[3] In the related *Yufa v. TSI* case, the court ordered Plaintiff to pay monetary sanctions for failing to identify which of TSI's products or systems infringe or to produce documents. Kanach Decl., Ex. N ("Sept. 30, 2013 Discovery Order") at 2:

failure of the plaintiff to prosecute or to comply with court rules or orders. Fed. R. Civ. P. 41 (b). In order to prevent undue delays in disposition of pending cases and to avoid congestion in the courts, a federal district court has the inherent power and discretion to dismiss a case sua sponte for failure to prosecute or to comply with court orders. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629-30 (1962); *McKeever v. Block*, 932 F.2d 795, 797 (9th Cir.1991). "[F]ailure to prosecute diligently is sufficient by itself to justify a dismissal." *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir.1976); *Cristanelli v United States Lines*, 74 F.R.D. 590, 593 (C.D. Cal. 1977). "But only unreasonable delay will support a dismissal for lack of prosecution." *Nealey v. Transportacion Maritima Mexicana, S.A*., 662 F.2d 1275, 1280 (9th Cir.1980).

In determining whether dismissal is warranted, the Court must weigh five factors:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. Although beneficial to the reviewing court, a district court is not required to make specific findings on each of the essential factors.

*Moneymaker v. CoBEN*, 31 F.3d 1447, 1451 (9th Cir. 1994) (citing *Henderson v. Duncan*, 779 F.2 1421,1424 (9th Cir. 1986)). "A reviewing court will give deference to the district court to decide what is unreasonable 'because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable.'" *Id*. (quoting *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984)).

### IV. DISCUSSION

**A.   Failure to Prosecute**

Defendant argues that the Court should dismiss this action for failure to prosecute based on Plaintiff's failure to comply with the Court's rules and deadlines, the Federal Rules of Civil Procedure, the applicable Patent Local Rules, and Plaintiff's discovery obligations. Mot. at 9. Particularly, Defendant contends that Plaintiff's repeated failure to comply with Patent L.R. 3-1 by filing infringement contentions that do not specifically identify how Defendant's products infringe mandates dismissal. *Id.* It is Defendant's position that no less drastic alternative sanctions will be effective. Reply at 4.

Plaintiff counters the Motion is deficient for lack of notice.[4]  Opp'n at 1.  With respect to substantive arguments, Plaintiff contends that (1) he has not failed to comply with federal or local rules in prosecuting this case, or failed to comply with his discovery obligations; (2) Defendant is responsible for any delay by its own failure to timely file pleadings and invalidity contentions, and to comply with its discovery obligations under the federal and local rules.  *Id.* at 1-6.

The Court will analyze each of the five factors in turn.

1.   The Public's Interest Expeditious Resolution of the Litigation

"The public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).

Defendant argues that the public's interest in expeditious resolution of this litigation weighs in favor of dismissal because Plaintiff has substantially hindered the Court's and Defendant's ability to move this case toward disposition, and Plaintiff's conduct evidences his refusal to litigate this action diligently or comply with the rules.  Mot. at 11.  Particularly, Defendant argues that Plaintiff has unnecessarily delayed by: (1) repeatedly failing to provide an explanation of how Defendant's products infringe; (2) refusing to produce documents in support of his contentions beyond the exhibits attached to his Complaints; (3) refusing to answer discovery or deposition questions regarding his theory of infringement; and (4) mischaracterizing a letter from Defendant's previous counsel as an admission of infringement.[5]  *Id.*

---

[4] Although Defendant noticed the Motion for April 8, 2014, the date on the caption was May 1, 2014.  Plaintiff was not prejudiced by this error, however, as Plaintiff acknowledged in his Opposition, filed on April 2, 2014, that he was aware of the correct date of the hearing was May 1.  Opp'n at 1.  Moreover, Plaintiff could not seriously have believed the Motion was calendared for April 8, 2014, given that the Reply was due on April 16, 2014, and that Plaintiff prepared and filed a Joint Case Management Statement on April 10, 2014, in which he listed the pending Motion as set for May 1, 2014.  Dkt. No. 118, at 4.  Plaintiff has not shown any prejudice from the error in the Notice of Motion.  *See, Emp'rs Ins. of Wausau v. Cal. Water Serv. Co.*, 2007 WL 2705222, at *2 (N.D. Cal., Sep. 14, 2007) (no prejudice to plaintiff as a result of e-filing error resulting in filing of notice of only one of three pending motions for summary judgment where plaintiff submitted its oppositions to the three motions as if it had received separate, timely notice of each).  Accordingly, Plaintiff's Motion to Strike is DENIED.

[5] This letter refers to the May 26, 2009 letter from Defendant's prior counsel, William Ireland, to Plaintiff, in which Mr. Ireland states: "First, to my knowledge, as based on my investigation, there has been no infringement of any valid patents by any actions of my client. There has been no concession, agreement, or confirmation of your claim of infringement.  Please do not make that mischaracterization again."  Ex. O to SAC, Dkt. No. 83.

7

1      Plaintiff counters that he has complied with all federal and local rules, and orders of this
2 Court. Opp'n at 4. It is Plaintiff's position that Defendant has hindered the progression of this
3 case by failing to act in good faith, cooperate with discovery, produce unredacted schematics until
4 ordered by the Court, or produce its devices for inspection. *Id.* at 5-8. Plaintiff argues that the
5 Second Supplemental ICs comply with L.R. 3-1 and specifically identify how Defendant's
6 products infringe on an element-by-element basis. *Id.* at 13. Further, Defendant has never
7 complained about Plaintiff's allegedly deficient discovery by filing a letter brief, whereas Plaintiff
8 has had to file a letter brief to compel Defendants to produce unredacted schematics so Plaintiff
9 could prepare the ICs. *Id.* at 9-13. Nor did Defendants inform the Court that there was any
10 discovery outstanding when given the opportunity to do so at the January 23, 2014 Case
11 Management Conference. *Id.* at 10. Further, Plaintiff objects to the mischaracterization of his
12 failure to disclose any experts as he informed counsel that he intends to testify in that regard. *Id.*
13 at 13.
14      Upon review of the record, the Court cannot say that Plaintiff alone is responsible for the
15 delay in this case. Defendant primarily argues that Plaintiff has failed to provide sufficient
16 discovery responses, yet Defendant did not move to compel further responses or explain why it
17 would have been futile to do so. Despite the discovery cut-off, the Court gave both parties the
18 opportunity to discuss any outstanding discovery on January 23, 2014, and Defendant did not
19 inform the Court that Plaintiff's responses were fatally deficient. Further, although Defendant
20 argues that the Second Supplemental ICs are insufficient, they did not meet and confer with
21 Plaintiff or move to compel. While Defendant argues that this would be futile because Plaintiff
22 cannot overcome the fact that Defendant's products use a reference voltage and duration to
23 determine the particle size, a review of the ICs shows that Plaintiff contends that Defendant's
24 products do not use a reference voltage, and that the schematics reveal that certain of the
25 components actually measure duration. *See* Second Supp'l ICs at 18-24. The fact that Defendant
26 disputes whether Plaintiff can prove the contentions in his ICs is not evidence that Plaintiff has not
27 diligently litigated this case.
28      For these reasons, the cases cited by Defendant are distinguishable. For instance, in

8

*Godfrey v. Astrue*, the plaintiff failed to comply with filing deadlines and the court's order to show cause on remand of her social security case. 2010 WL 342858, at * 1 (C.D. Cal. Jan. 29, 2010). Significantly, the plaintiff did not file a memorandum even after the court sua sponte extended the time for her to file, and the parties stipulated to a further extension. *Id*. Here, Plaintiff has never failed to file pleadings or provide discovery responses. In *Ferdik v. Bonzelet*, the Ninth Circuit upheld dismissal where the case dragged on for over a year and a half, during which time it consumed large amounts of the court's valuable time that it could have devoted to other cases on the docket. 963 F.2d 1258, 1261 (9th Cir. 1992). After two previous chances to amend, the plaintiff was advised that dismissal would certainly occur if he failed to file an amended complaint, yet he did not file an amended pleading. *Id.* at 1260. In the case at bar, however, the delay was fairly attributable to both parties. Finally, in *Moneymaker*, the Ninth Circuit upheld dismissal where the plaintiff failed to take any substantive action in his case until after the motion to dismiss was filed: "Anything Moneymaker did to move his actions to trial was after he was forced to do so and he 'cannot use his actions after the motion to dismiss was filed as evidence of his diligence in prosecuting the suit.'" 31 F.3d at 1452 (quoting *Fidelity Philadelphia Trust Co., v. Pioche Mines Consol., Inc*., 587 F.2d 27, 29 (9th Cir. 1978)). Here, there has been no such lack of diligence by Plaintiff.

Accordingly, this factor weighs against dismissal.

2.     The Court's Need to Manage its Docket

"It is incumbant upon the Court to manage its docket without being subject to routine noncompliance of litigants." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

Defendant argues that the Court has already given Plaintiff ample time to prosecute this action and provide infringement contentions, as well as extensions of time to comply with the Court's directives. Mot. at 12. Defendant cites Docket Nos. 104 (Order Denying MSJ), 109 (Order Setting Case Mgmt. Conf.), and 111 (Order Following Case Mgmt. Conf.) as examples of Plaintiff's interference with the Court's ability to effectively manage its docket. *Id*. However, in Docket 104, the Court denied Defendant's Motion for Summary Judgment as premature, in part because it had not objected to Plaintiff's ICs; in Docket No. 109, the Court set a case management

conference for the parties to address Plaintiff's ICs and all other outstanding discovery, in part because Plaintiff complained that Defendant had never provided unredacted schematics; and in Docket No. 111, the Court set a date for Plaintiff to file the second set of supplemental ICs after Defendant's production of the schematics.

Accordingly, this factor weighs against dismissal.

### 3. The Risk of Prejudice to Defendant

Defendant argues that Plaintiff's dilatory conduct has caused it prejudice. Mot. at 12. Defendant maintains that Plaintiff's failure to comply with discovery obligations or meet and confer has prevented Defendant from filing a motion for summary judgment, and has resulted in the denial of Defendant's original motion. *Id*. at 13. Defendant argues that it has expended significant effort in meeting and conferring with Plaintiff only to have him delay further. *Id*. Defendant also contends that Plaintiff has failed to follow Court orders by filing compliant ICs. *Id*. Defendant also argues that Plaintiff has behaved similarly in the other patent infringement cases. *Id*.

When considering prejudice, the failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of actual prejudice to defendant from the failure. *Apostol v. Vilsack*, 2010 WL 1854645, at *5 (N.D. Cal. Mar. 6, 2010) (citing *Moneymaker*, 31 F.3d at 1452-53). Though the presumption is rebuttable, "[t]he law presumes injury from unreasonable delay." *Moneymaker*, 31 F.3d at 1453. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case. *In re Phenylpropanolamine (PPA) Products Liab. Litig*., 460 F.3d 1217, 1227 (9th Cir. 2006) (quotation marks and citation omitted). Further, "[t]he failure to produce documents as ordered ... is considered sufficient prejudice." *Adriana Intern. Corp. v. Thoeren*., 913 F.2d 1406, 1412 (9th Cir. 1009) (citing *Securities and Exchange Comm'n v. Seaboard Corp*., 666 F.2d 414, 417 (9th Cir. 1982)).

Here, the Court agrees with Defendant that there has been significant delay in the prosecution of this case. However, the Court disagrees that all of the delay is chargeable to Plaintiff. In *Apostol*, the court found prejudice where the plaintiff refused to participate in the

discovery process or the litigation. 2010 WL 1854645, at *5. The plaintiff refused to appear for his deposition, interfered with production of records, and refused to provide other outstanding discovery, despite repeated court orders. *Id.* The defendant was forced to file repeated discovery motions, while the plaintiff repeatedly ignored the court's orders. Further, the underlying event in the case had occurred nearly three years prior to the filing of the lawsuit, and some of the supporting allegations had occurred several years before that, thus delay risked the loss witness' memories and the integrity of evidence. *Id.*

By contrast, in this case, Defendant has not filed any discovery motions. When Defendant received Plaintiff's ICs in July of 2013, Defendant did not move to compel, electing instead to make a motion for summary judgment. Plaintiff has now filed the Second Supplemental ICs, which now set forth his theory of infringement. Although Defendant contends that the ICs are still defective, the Court finds that they are sufficiently detailed to enable the Court to evaluate a renewed motion for summary judgment. There is little prejudice to Defendant beyond the expenditure of additional time and expense to bring a dispositive motion. Accordingly, this factor weighs against dismissal.

### 4. Disposition of Cases on Their Merits

Defendant argues that the public policy favoring resolution on the merits does not outweigh Plaintiff's failure to comply with procedural rules and Court orders. Mot. at 13.

Notwithstanding the public policy favoring disposition on the merits, it is the responsibility of the moving party to move toward that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics. *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991). Thus, in order to determine whether dismissal is warranted, courts weigh this factor against the plaintiff's delay and the prejudice suffered by the defendant. *Moneymaker*, 31 F.3d at 1453.

Here, weighing Plaintiff's delay against the other factors, the Court finds that dismissal is not warranted because the other factors do not strongly weigh against Plaintiff. Although the Court agrees that Plaintiff has delayed, Defendant also bears some responsibility. Nor does the Court agree that Plaintiff has failed to comply with the Court's orders with respect to filing compliant ICs, as Plaintiff averred he was unable to do so until he reviewed the unredacted

11

schematics. Upon viewing those documents, Plaintiff filed supplemental ICs before the court-ordered submission date. Further, the Court found little prejudice to Defendant based on the delay. Although Defendant puts great emphasis on Plaintiff's "litigation tactics" in the other cases he is currently prosecuting, none of these cases were dismissed for lack of prosecution. Rather, four of the eight cases regarding infringement have proceeded to summary judgment. [6]

### 5. The Availability of Less Drastic Sanctions

A district court need not explicitly consider alternative sanctions for an order of dismissal to be upheld. *Moneymaker*, 31 F.3d at 1454-55. However, a "reasonable exploration of possible and meaningful alternatives" is required. *Anderson*, 542 F.2d at 525 (citing *Von Poppenheim v. Portland Boxing and Wrestling Comm'n*, 442 F.2d 1047 (9th Cir. 1971)).

Defendant argues that no other less drastic sanctions appear reasonably likely to accomplish the necessary result because it is highly unlikely that less drastic alternatives will change Plaintiff's course of conduct. Mot. at 14. Defendant first argues that the Court has twice attempted to avoid outright dismissal by providing Plaintiff with ample opportunity and encouragement to comply with his obligations and court orders, and repeatedly warning Plaintiff of his obligation to vigorously prosecute this action and of the consequences if he failed to do so. Mot. at 14. Yet, Plaintiff has again failed to provide an adequate explanation for how its products infringe in the ICs based on the fact that Defendant asserts its products do not measure the width or duration of the particle and uses a reference voltage. *Id*.

Second, Defendant argues that both the Court and Defendant have unsuccessfully explored meaningful alternatives to dismissal. *Id.* (citing *Ferdik*, 963 F.2d at 1262). In this regard, Defendant contends that sanctions other than dismissal do not appear to be appropriate given that Plaintiff has failed to participate in his own litigation and he continues to assert that Defendant's products infringe based on an incorrect interpretation of the schematics. *Id*. at 14-15.

Third, Defendant maintains that ordering Plaintiff to respond to discovery is not a reasonable alternative because the Court has already provided him with ample time and has issued

---

[6] *Yufa v. Lockheed*; *Yufa v. Martin*; *Yufa v. TSI*; *and Yufa v. Hach*.

several orders which Plaintiff has violated. *Id*. at 15. Defendant asserts that Plaintiff "failed to comply with the most basic of the Court's orders regarding resolving discovery disputes." *Id*[7]. In this regard, Defendant argues that monetary sanctions would not be sufficient because they will not provide Defendant with the information it needs to defend this case, and Plaintiff does not have the financial resources to pay such sanctions. *Id*. Defendant also speculates that it is "highly unlikely that [Plaintiff] would comply with a court order for monetary sanctions when he has failed to comply with all other court orders." *Id.* Further, evidentiary sanctions also would fail because they would not provide Defendant with all of the information that it needs to fully prepare its defenses. *Id*.

The Court disagrees with Defendant. Although Defendant contends that Plaintiff cannot possibly file compliant ICs, Defendant's quarrel at this point appears to be with whether Plaintiff's theory of infringement is correct, not with whether Plaintiff has set forth a specific theory of how each element of Defendant's products infringe, as required by Patent L.R. 3-1. This issue is best resolved on summary judgment, not on a motion to dismiss for failure to prosecute. Defendant has not sufficiently argued that the ICs actually fail to set forth a specific theory of infringement as to each of Defendant's components.

Accordingly, the fifth factor also weighs against dismissal.

6.   Conclusion

Based on the analysis above, the Court finds that Defendant has not established that dismissal for failure to prosecute is appropriate. The delay in this case is fairly attributable to both parties, and there has been no significant prejudice to Defendant. Further, resolution on the merits is preferable.

**B.   Dismissal for Failure to Provide Discovery**

Defendant also moves to dismiss this action pursuant to Federal Rule of Civil Procedure 37

---

[7] Defendant refers to Dkt. No. 106, Plaintiff's Discovery Letter, which Plaintiff filed after the Court issued its Order denying Defendant's MSJ as premature. However, Defendant had not complained that the ICs were deficient up until this point, which was after the discovery cut-off date. Plaintiff filed supplemental ICs in compliance with the Court's order, but simultaneously advised the Court in that he could not sufficiently explicate his theory of infringement without the unredacted schematics.

1  due to Plaintiff's conduct in hindering discovery and failing to comply with the Court's order to
2  file ICs that comply with Patent L.R. 3-1. Mot. at 16.
3  Rule 37 authorizes the Court to apply sanctions for failure to comply with court discovery
4  orders. *See* Fed. R. Civ. P. 37(d), 37(b). Rule 37(b)(2)(A) provides in part:

> If a party or a party's officer, director, or managing agent...fails to obey an order to provide or permit discovery... the court where the action is pending may issue further just orders. They may include... (v) dismissing the action or proceeding in whole or in part.

Fed. R. Civ. Proc. 37(b)(2)(A)(v). However, sanctions are appropriate only in "extreme circumstances" and where the violation is "due to willfulness, bad faith, or fault of the party." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.2002.) (quoting *United States v. Kahaluu Constr. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988) (citations omitted)).

The most drastic sanction, dismissal, generally requires a finding that the conduct was "due to willfulness, bad faith or fault of the party." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d at 1233. This standard is met by "[d]isobedient conduct not shown to be outside the litigant's control." *Fair Housing of Marin*, 285 F.3d at 905.

In evaluating whether to impose the sanction of dismissal under Rule 37, a district court should consider five factors (the "*Malone* factors"): (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002) (citing *Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). Of these, the key factors are prejudice and the availability of lesser sanctions. *See Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir.1990); *Adriana*, 913 F.2d at 1412; *Ferdik*, 963 F.2d at 1261. In evaluating the propriety of sanctions, the Court looks at all incidents of a party's misconduct. *Adriana*, 913 F.2d at 1411.

With respect to the third factor, a defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case. *Malone*, 833 F.2d at 131. However, delay alone will not justify dismissal. *Wanderer*, 910

14

F.2d at 656. Failure to produce documents as ordered, however, is considered sufficient prejudice. *Securities and Exchange Comm'n*, 666 F.2d at 417 (9th Cir. 1982).

Here, as discussed above, Defendant has not established prejudice under *Malone* because it has not established that Plaintiff failed to comply with any Court order. At best, Defendant argues that Plaintiff's ICs are incorrect, not insufficient, and that Plaintiff has delayed by not providing discovery and compliant ICs earlier. Further, the Court cannot ascribe all of the alleged delays in this case solely to Plaintiff's conduct. Although Defendant accuses Plaintiff of withholding discovery, Defendant never moved to compel responses prior to the discovery cut-off or sought the Court's assistance in obtaining the information it now says is vital to its case. For instance, Defendant received Plaintiff's ICs in July of 2013, but waited until discovery closed and then made a motion for summary judgment, without ever informing the Court that Defendant was unable to obtain discovery or compliant ICs. Defendant also refused to provide unredacted schematics until Plaintiff sought the Court's assistance. The Court gave Defendant the opportunity to discuss any outstanding discovery at the January 2014 case management conference, yet Defendant did not complain of insufficient responses. Under these circumstances, the drastic sanction of dismissal is not warranted.

The fifth factor of the *Malone* test considers the adequacy of less drastic sanctions. *Malone*, 833 F.2d at 131. As discussed above, Defendant has never sought the Court's assistance in obtaining further discovery responses from Plaintiff. Nor has Defendant ever sought sanctions based on Plaintiff's failure to comply with a discovery order. Nor has the Court sanctioned Plaintiff for failing to file compliant ICs. Although Plaintiff's first set of ICs were deficient, Defendant did not move to compel. Although Plaintiff filed non-compliant supplemental ICs, Plaintiff concurrently informed the Court that he needed the unredacted schematics to file compliant ICs. Defendant now argues that it would be futile to compel Plaintiff to file further ICs because it believes Plaintiff can never assert a valid theory of infringement.

Accordingly, to the extent Defendant contends Plaintiff's theory is incorrect, the Court finds that compelling further ICs would be futile because this issue is best determined on summary judgment. To the extent Defendant contends that Plaintiff's ICs continue to fail to show how

15

Defendant's products infringe, the Court finds that a motion to compel would not be futile, given that Plaintiff had only recently obtained access to the schematics. The fifth factor, thus weighs against dismissal at this time.

Accordingly, after careful consideration of the *Malone* factors, and pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, Defendant's Motion to Dismiss this action is DENIED.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to Rule 41(b) and Rule 37 is DENIED.

**IT IS SO ORDERED.**

Dated: October 10, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge